IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MACKEAN P. NYANGWESO       )
MAISHA,                    )
                           )
        Plaintiff,          )
                           )
    v.                     )      1:12-CV-371
                           )
THE UNIVERSITY OF NORTH    )
CAROLINA, et al.,          )
                           )
        Defendants.         )

# MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

In opposition to the defendants' motions for summary judgment, the plaintiff filed his own declaration under oath and the declarations under oath of four other witnesses. The defendants move to strike. To the extent the plaintiff's declaration is inconsistent with his deposition testimony, lacks foundation, or lacks personal knowledge, the Court will grant the motion. The Court will also grant the motion as to the testimony of other witnesses proffered by the plaintiff to the extent that those declarations include expert opinions the plaintiff did not timely disclose and inadmissible hearsay testimony.

1. The Plaintiff's Declaration[1]

The defendants ask the Court to strike the entirety of Mr. Maisha's sworn declaration because it is inconsistent with his deposition testimony. In the alternative,

---

[1] Docket references are to the docket number and page number appended by the CM-ECF system. Mr. Maisha's declaration can be found at Doc. 53-1, pages 12-27.

they ask the Court to strike those inconsistent portions and other testimony that would be inadmissible at trial.

A party may not create a genuine issue of material fact by "filing a later affidavit that flatly contradicts that party's earlier sworn deposition." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *see also In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512-13 (4th Cir. 2011) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." (quoting *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984))).

Several statements Mr. Maisha made in his affidavit are either directly contradicted by his sworn deposition testimony or include information that he failed to disclose in his sworn testimony, despite lengthy questioning:

- In his deposition, Mr. Maisha testified that English was his first language. (Doc. 57-3 at 3.) Yet, in his affidavit, he says, "I am of African dissent [sic] for whom English is not my native tongue . . . " (Doc. 53-1 at p. 17 ¶ 31.)[2]
- During his deposition, Mr. Maisha was asked to detail how Professor Fine discriminated against him. (Doc. 57-3 at 9.) He did not say that Professor Fine made negative comments about how he spoke English, (*see* Doc. 57-3 at 9), nor

---

[2] Mr. Maisha asserts that he otherwise testified and disclosed that Swahili was his native language, but he provides no citation to the record for that factual assertion; rather he cites testimony that he speaks Swahili and Kisii, which is not the same thing. (Doc. 65 at 2.)

did he disclose this information when asked in written discovery to state fully all facts or information supporting his contention that the University discriminated against him. (*See* Doc. 57-2 at 4-10.) Yet, in his affidavit, Mr. Maisha testifies for the first time that "[w]hile working with Professor Fine he would often make negative comments about how [he] spoke English." (Doc. 53-1 at p. 19 ¶ 45.)

- In his declaration, Mr. Maisha states that Professor Koch did not assign him any consulting duties in 2010 and "appeared to prefer working with [his] white student counterparts." (Doc. 53-1 at p. 27 ¶ 100.) He did not mention this in his discovery responses, (Doc. 57-2), nor in his deposition.[3] (Doc. 57-3.)

- In his declaration, Mr. Maisha explains in detail the circumstances surrounding a make-up mid-term exam in a class with Professor Qaqish. (Doc. 53-1 at pp. 15-16 ¶¶ 24-26.) In his deposition, however, Mr. Maisha first stated that he did not think he took an exam with Professor Qaqish. (Doc. 57-3 at 7.) Mr. Maisha later remembered a preliminary exam, which "was kind of like a mid term," but said he asked Professor Qaqish for permission not to take that exam. (Doc. 57-3 at 8.) Mr. Maisha never mentioned taking a make-up mid-term exam or provided details surrounding that exam.

---

[3] Mr. Maisha has not disputed that he did not mention this during his deposition. (*See* Doc. 65 at 2-3.) Rather, he claims he disclosed this in a letter he wrote to university officials, which states, "Dr. Koch . . . could not continue . . . working with [him] after [he] filed a grievance complaint…" (Doc. 65 at 3 (referencing a letter filed at Doc. 65-1 at 11).) Elsewhere in the letter he repeats that Dr. Koch "did not like [him] following a pending grievance." (Doc. 65-1 at 11.) Nowhere in the quoted language or elsewhere in the letter did Mr. Maisha mention race in connection with Dr. Koch's actions, nor did he mention Dr. Koch's alleged preference for working with white students. (*See* Doc. 65-1 at 11-13.)

- During his deposition, Mr. Maisha was evasive in response to questions related to Norway and his activities at the University of Oslo. (Doc. 57-3 at 2, 4.) He could not recall the names of any professors or colleagues or his specific dates of employment, other than to say that he had worked in Norway as recently as 2013. (Doc. 57-3 at 4-6.) Only after the defendants submitted a declaration from a University of Oslo professor detailing Mr. Maisha's activities there, (Doc. 43-10), did he contend, in his affidavit, that he sought employment at the University of Oslo because of the defendants' actions and that he set aside four hours a day while in Norway to work on projects assigned by Professor Koch. (Doc. 53-1 at p. 27 ¶¶ 99-101.)
- During his deposition, Mr. Maisha was asked whether he had consulted a doctor for his emotional distress, and he testified that "[s]eeing a doctor requires insurance [and he] didn't have insurance after [he] stopped working for the university," which occurred at the end of 2010. (Doc. 57-3 at 10.) In his declaration, however, he stated that he "used [his] loan disbursement for the fall 2011 [semester] to cover appropriate costs associated with living in Chapel Hill and other related expenses including rent, car and *health insurance…*" (Doc. 53-1 at p. 26 ¶ 91 (emphasis added).)

As these examples make clear, Mr. Maisha's declaration includes impermissible attempts to bolster or contradict his prior sworn testimony. The defendants ask the Court to strike the entire affidavit based on the Fourth Circuit's determination that a court may disregard a sham affidavit. *See In re Family Dollar FLSA Litig.*, 637 F.3d at

513; *Jackson v. Consol. Coal Co.*, 21 F.3d 422 (table), 1994 WL 89801, at *3 (4th Cir. Mar. 22, 1994) (unpublished and per curiam). In *In re Family Dollar*, however, the court disregarded only those parts of the affidavit that were inconsistent with the witness's deposition and did not strike the entire deposition. *In re Family Dollar*, 637 F.3d at 513. The same is true in *Jackson*. *See Jackson*, 21 F.3d at *2-3. Here, striking the entire affidavit seems overly harsh, as inconsistencies have been identified in only about ten percent of the paragraphs. Instead, the Court will disregard the parts of the affidavit that are inconsistent with Mr. Maisha's deposition testimony, specifically the parts of Paragraphs 24-26, 31, 45, 91, and 99-101, discussed *supra*.

The defendants contend that much of Mr. Maisha's declaration is otherwise inadmissible because it is hearsay, personal beliefs, opinion, or conclusory. (Doc. 58 at 7-10.) This argument has merit.

Federal Rule of Civil Procedure 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Personal beliefs, opinion, and conclusory statements are insufficient to create a genuine dispute of material fact. *See Crockett v. Mission Hosp., Inc.*, 717 F.3d 348, 356 (4th Cir. 2013) (holding that mere speculation and inference are "insufficient to withstand summary judgment"); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) ("[S]ummary judgment affidavits cannot be conclusory or based upon hearsay." (citation omitted)). Nor may a court consider hearsay proffered in an

5

affidavit. *See Hoop v. United States*, 94 F. Supp. 2d 703, 707 (E.D.N.C. 2000) ("Inadmissible hearsay cannot be used to oppose summary judgment.").

Mr. Maisha's declaration presents a number of evidentiary problems. He states that "[b]ased upon University statistics between 2006 and 2010, UNC had an extremely low rate of admission and graduation rate for the Biostatistics Department in the DrPH and PhD programs for students of African dissent [sic]. Between 2006 and 2010 of the 55 dissertations submitted only 4 were from students of African dissent [sic] and only one student of African dissent [sic] graduated from the PhD program." (Doc. 53-1 at p. 15 ¶¶ 22-23.) He does not explain how he became familiar with these statistics or how he knows that only four of fifty-five dissertations were from African students. Elsewhere, he states that a lender never assigned a certain loan to UNC, but does not explain how he knows this either. (Doc. 53-1 at p. 26 ¶ 98.) These paragraphs will be disregarded for lack of foundation and lack of personal knowledge.

Mr. Maisha refers to actions taken by "[s]ome faculty," "[o]ne faculty," (Doc. 53-1 at p. 13 ¶ 12), and "[o]ther students," (Doc. 53-1 at p. 17 ¶ 31), without identifying these faculty members and students. He states that professors used an exam as a "pretext and an opportunity to secretly take dominion of [his] original research idea and unethically acquired [his] dissertation research paper by pretense," (Doc. 53-1 at p. 20 ¶ 51), without stating how these professors acted unethically or secretly, or how they converted his research. Similarly, Mr. Maisha uses conclusory words to characterize actions and conduct. For example, he says that "the Director of Graduate admissions begun [sic] to intimidate [him]," (Doc. 53-1 at p. 13 ¶ 7), that "[t]he

6

atmosphere at the department became so hostile towards [him]," (Doc. 53-1 at p. 13 ¶ 12), and that a professor "used his influence and power" to prevent him from being treated fairly. (Doc. 53-1 at pp. 23-24 ¶ 73.) This testimony is conclusory.

Mr. Maisha offers his personal opinion that he was deprived of due process, (Doc. 53-1 at p. 16 ¶ 29, p. 25 ¶ 86), based on his race and national origin, (Doc. 53-1 at p. 17 ¶ 31, p. 19 ¶ 42), and in bad faith, (Doc. 53-1 at p. 24 ¶ 76); that other witnesses are dishonest, (Doc. 53-1 at p. 20 ¶ 53); that persons acted intentionally, (Doc. 53-1 at p. 25 ¶ 84), maliciously, (Doc. 53-1 at p. 16 ¶ 29), with "impunity," (Doc. 53-1 at p. 18 ¶ 38), and unethically, (Doc. 53-1 at p. 20 ¶ 51); that he failed a test due to unspecified "irregularities," (Doc. 53-1 at p. 19 ¶ 44); and that his mistreatment is related to another academic scandal. (Doc. 53-1 at p. 22 ¶ 64, p. 24 ¶ 81.) He repeatedly purports to know what other witnesses knew, thought, or should have known, and states what they could foresee or should have done. (*E.g.*, Doc. 53-1 at pp. 20-21 ¶¶ 52, 54, 56, p. 23 ¶ 66.)

Portions of other paragraphs are argumentative. (*E.g.*, Doc. 53-1 at p. 17 ¶ 32 (maintaining that the denial of his complaint by the Department of Education was meaningless); Doc. 53-1 at p. 19 ¶ 42 (contending that a professor "cannot point to any legitimate codified reason for denying" Mr. Maisha's enrollment in a course); Doc. 53-1 at p. 18 ¶ 39 (reciting the testimony of witnesses and then stating, "yet they could not point to that specific written policy at UNC"); Doc. 53-1 at p. 21 ¶ 59 (characterizing witnesses' testimony as "disingenuous"); Doc. 53-1 at p. 24 ¶ 80 (stating that the University should be ashamed); Doc. 53-1 at p. 25 ¶ 87 (listing his contentions); Doc.

7

53-1 at p. 27 ¶ 103 (stating that his "work with the University of Oslo had no bearing on [his] studies at UNC").)

These opinions, conclusions, and arguments are speculative and irrelevant, and the Court will disregard them. The Court will only consider those sentences and paragraphs that recite facts about which Mr. Maisha has personal knowledge.

2. Other Declarations

Mr. Maisha offers sworn declarations of four additional witnesses: Peter Ombui, (Doc. 54 at 33-37), Anna Severens, (Doc. 53-1 at 6-11), Father Gradus Oyaro, (Doc. 54 at 22-26), and Jane Monda. (Doc. 54 at 27-32.) Each witness discusses his or her observations of Mr. Maisha during the relevant time in support of his claims that he suffered emotional distress, and each mentions statements Mr. Maisha made about alleged events at UNC. Three witnesses offer diagnoses of mental health conditions.

a. Peter Ombui

Mr. Ombui testifies that he is a "licensed and registered Professional Counselor," that he evaluated and treated Mr. Maisha, and that he diagnosed Mr. Maisha with "acute clinical depression and anxiety related disorders." (Doc. 54 at p. 33-36 ¶¶ 2, 17, 24.) He repeats statements Mr. Maisha made to him about alleged mistreatment at UNC, (Doc. 54 at pp. 35-36 ¶¶ 19-22), and he characterizes the actions of certain defendants as "deliberate, reckless and intend[ing] to cause harm." (Doc. 54 at p. 37 ¶ 27.) Mr. Maisha did not identify Mr. Ombui as a fact or expert witness, (Doc. 65 at 13), and the defense was unaware of his existence until Mr. Maisha filed Mr. Ombui's declaration.

8

Under Federal Rule of Civil Procedure 26(a)(2), each party is required to disclose expert witnesses, including "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C); *see also Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC*, 227 F.R.D. 421, 423-24 (M.D.N.C. 2005) (noting that certain witnesses, such as a physician, "must be disclosed as an expert because he or she is relying on 'scientific, technical, or other specialized knowledge.'" (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756 n.2 (7th Cir. 2004))). Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595-96 (4th Cir. 2003).

Mr. Maisha offers no reason for his failure to disclose Mr. Ombui as a witness and merely contends that his declaration is offered to corroborate Ms. Monda's testimony. (Doc. 65 at 15.) That is not a valid reason for failing to disclose a witness.

Moreover, the prejudice to the defendants is obvious. The defendants have had no opportunity to question Mr. Ombui about or otherwise investigate his qualifications, his personal relationship with Mr. Maisha, or the nature of his alleged mental health treatment, all of which occurred by telephone. (*See* Doc. 54 at p. 34 ¶ 8, pp. 35-36 ¶¶ 18-23; *see also* Doc. 54 at p. 30 ¶ 28.) Further, because Mr. Maisha did not identify any expert witnesses or provide treatment records from Mr. Ombui or any other mental health

9

provider, the defendants had no reason to expect such evidence or to identify and prepare rebuttal evidence.[4]

Because Mr. Maisha did not disclose or identify Mr. Ombui as a witness, the Court will strike Mr. Ombui's affidavit.

  b. Anna Severens

Ms. Severens repeats numerous statements she says Mr. Maisha made to her at or near the time of the events. (Doc. 53-1 at pp. 7-10 ¶¶ 16-36.) Most of these statements are conclusory, non-specific, and matters of opinion. Perhaps some of her testimony about these statements could be admissible to show Mr. Maisha's state of mind, but they are not admissible to prove the truth of Mr. Maisha's out-of-court statements as he recounted events to Ms. Severens.

Mr. Maisha contends that the statements are admissible under Rule 803(3) as statements of his then-existing mental or emotional condition. (Doc. 65 at 13-14.) Rule 803(3) requires the statements be made substantially contemporaneous with the events at issue, *Ross v. Saint Augustine's Coll.*, 103 F.3d 338, 342 (4th Cir. 1996), and does not allow statements "of memory or belief to prove the fact remembered or believed." Fed. R. Evid. 803(3). Mr. Maisha's statements to Ms. Severens about earlier events at UNC do not meet these requirements.

---

[4] Additionally, Mr. Ombui does not know the witnesses who he alleges acted deliberately and recklessly, and he does not purport to have spoken to them or to have otherwise investigated the factual basis of his opinions. In sum, Mr. Ombui provides no basis for this aspect of his opinion testimony. Finally, many of the problems addressed in connection with the testimony of the three other witnesses also exist in Mr. Ombui's testimony. *See* discussion *infra*.

Mr. Maisha's argument that his statements to Ms. Severens are admissible because they were made for purposes of medical diagnosis, (Doc. 65 at 13-14), is frivolous. Rule 803(4) requires, *inter alia*, that statements be "made for—and . . . reasonably pertinent to—medical diagnosis or treatment." Fed. R. Evid. 803(4). Ms. Severens was Mr. Maisha's girlfriend, (Doc. 53-1 at p. 7 ¶ 11), and there is no evidence that she is a physician or mental health professional who could or did provide treatment to Mr. Maisha. *See Willingham v. Crooke*, 412 F.3d 553, 561-62 (4th Cir. 2005) (admitting the plaintiff's statements to doctors about the cause of her emotional trauma where the plaintiff sought treatment from the doctors).[5]

Moreover, even if Ms. Severens did provide medical treatment, these statements would not be admissible. While the fact that Mr. Maisha was having difficulties with his professors might be relevant to mental health diagnosis and treatment, the details of his difficulties are, in significant part, not relevant. *See Willingham*, 412 F.3d at 562 (noting that the plaintiff's statement that officers pointed a firearm at her was relevant to her diagnosis and treatment for emotional trauma, but concluding that other details were not and thus were inadmissible); *Doali-Miller v. SuperValu, Inc.*, 855 F. Supp. 2d 510, 515 (D. Md. 2012) (noting that statements identifying the persons responsible for

---

[5] While the word "physician" is typically used in stating the test, the rule is not so limited. *See Morgan v. Foretich*, 846 F.2d 941, 949 n.17 (4th Cir. 1988) (noting that the rule might allow the admission of statements made to psychiatrists, psychologists, or even family members). Nonetheless, a proponent must make some showing that his motive in making the statements was for purposes of medical diagnosis or treatment. *See Willingham*, 412 F.3d at 562. This is not present in Mr. Maisha's statements to Ms. Severens, who was his girlfriend. *See Stull v. Fuqua Indus., Inc.*, 906 F.2d 1271, 1273-74 (8th Cir. 1990) (stating that the rule covers statements made to "someone with a special relationship to the person seeking treatment, such as a parent").

an injury are seldom sufficiently related to diagnosis or treatment and therefore inadmissible). Finally, Mr. Maisha did not disclose Ms. Severens as an expert witness as required by Federal Rule of Civil Procedure 26(a)(2).

The Court will not consider Paragraphs 16-36 of Ms. Severens' declaration for the truth of the statements Mr. Maisha made to her about events. The Court also will not consider the statements in Paragraph 31 and 34 as to Ms. Severens' reactions to Mr. Maisha's statements because they are irrelevant.

Mr. Maisha did identify Ms. Severens as a fact witness, (Doc. 65-1 at 42-43), and the Court will consider her testimony about her observations of Mr. Maisha during the relevant time. Specifically, the Court will consider Paragraphs 37-40 to the extent Ms. Severens testifies to her lay observations of Mr. Maisha's mental and physical state, but not to the extent she adopts Mr. Maisha's characterizations of what happened at UNC because such characterizations are hearsay. The Court will consider Paragraphs 1-15 and Paragraph 41 in full.

    c. <u>Father Gradus Oyaro</u>

Fr. Oyaro testifies that he obtained his training "in Kenya and at the Pontifical College in Rome, Italy in Theology, Divinity and Counselling," (Doc. 54 at p. 22 ¶ 5), that he is "able and professionally qualified to identify when one is clinically depressed and/or suffering from an anxiety disorder," (Doc. 54 at p. 23 ¶ 8), and that he has diagnosed Mr. Maisha as "suffering from acute clinical depression and anxiety related disorders." (Doc. 54 at p. 26 ¶ 30.) This testimony is inadmissible for several reasons.

First, Mr. Maisha only disclosed Fr. Oyaro as a fact witness, not an expert witness,[6] and therefore Mr. Maisha may not rely on this expert testimony absent a showing that the failure to disclose was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also S. States Rack & Fixture, Inc.*, 318 F.3d at 595-96. Mr. Maisha makes no such explanation or showing. The prejudice to the defendants caused by an unexpected witness proposing to offer psychiatric diagnoses is obvious, as discussed *supra* in connection with Mr. Ombui's testimony.

Moreover, Mr. Maisha has not established Fr. Oyaro's qualifications to testify as to medical or psychiatric diagnoses. Fr. Oyaro does not disclose what kind of degree he received from what institution in Kenya or whether he is licensed as a counselor by any governmental or professional entity. Therefore, the Court will disregard those parts of Paragraph 30 in which Fr. Oyaro purports to diagnose Mr. Maisha with clinical depression, anxiety, and other mental health conditions. (*See* Doc. 54 at p. 26 ¶ 30.)

Beyond his testimony as to diagnoses, Fr. Oyaro repeats numerous statements he says Mr. Maisha made to him at or near the time of the events. (Doc. 54 at pp. 24-26 ¶¶ 17-25, 27, 29.) To the extent Fr. Oyaro merely repeats what Mr. Maisha told him, his testimony suffers from the same problems as Ms. Severens' testimony. The Court will not consider Fr. Oyaro's testimony in Paragraphs 17-25, 27, and 29 for the truth of what Mr. Maisha told him.

---

[6] Nothing in the disclosure of Fr. Oyaro as a fact witness indicated that Fr. Oyaro would offer opinion testimony concerning medical or psychological diagnoses. (*See* Doc. 65-1 at 42-44.)

Mr. Maisha did disclose Fr. Oyaro as a fact witness, (Doc. 65-1 at 42-43), and the Court will consider his admissible, non-hearsay, non-expert testimony concerning his observations of Mr. Maisha's mental state.

    d. Jane Monda

Ms. Monda recites statements Mr. Maisha made to her about events, (Doc. 54 at pp. 28-29 ¶¶ 15-21, pp. 31-32 ¶¶ 32-34, 37-42), and it appears that Mr. Maisha is offering her testimony for the truth of Mr. Maisha's out-of-court statements about those events because they were made for purposes of medical diagnosis. (*See* Doc. 65 at 13-14.)

First, Mr. Maisha did not disclose Ms. Monda as an expert witness as required by Rule 26(a)(2), and he provided no records from Ms. Monda or any other medical provider. (*See* Doc. 65-1 at p. 51 ¶ 3.) Mr. Maisha's disclosure of Ms. Monda as a fact witness is ambiguous. He explicitly states that "[Ms.] Monda will discuss the effect the differential treatment by the Biostatistics Department had on [him] because of [his] race and national origin and the financial and the emotional harm that it caused [him]. She counseled [him] and has firsthand knowledge of the impact the discriminatory treatment had on [him]." (Doc. 65-1 at 40.) He also says that "[Ms.] Monda has continued to counsel [him] on how to deal with the symptoms associated with extreme emotional distress, anxiety, [and other problems]." (Doc. 65-1 at 43.) He provided some information about her qualifications as a counselor. (*See* Doc. 65-1 at 43 (stating that Ms. Monda is a "School Counselor" with a "BA [in] Psychology and Counselling [from the] University of Nairobi").) However, that information is insufficient to comply with Rule 26(a)(2)'s requirements concerning experts, and it certainly does not contain any

14

indication that Ms. Monda provided psychiatric diagnoses. Because Mr. Maisha did not disclose Ms. Monda as an expert witness, the Court will not consider her testimony as to any diagnosis of Mr. Maisha.

Otherwise, Ms. Monda's testimony suffers from the same problems as Ms. Severens' and Fr. Oyaro's. The Court will not consider her testimony repeating Mr. Maisha's out-of-court statements about events, (Doc. 54 at pp. 28-29 ¶¶ 15-21, pp. 31-32 ¶¶ 32-34, 37-42), for the truth of those statements. The Court will not consider her testimony concerning her discussions and contacts with Mr. Ombui and Fr. Oyaro, (Doc. 54 at pp. 30-31 ¶¶ 28, 29, 31), for the same reasons the Court will not consider the direct testimony of those witnesses.

While the Court will not consider the hearsay aspects of Ms. Monda's testimony or her purported expert opinions diagnosing Mr. Maisha, the Court will consider her non-expert, non-hearsay testimony. Mr. Maisha disclosed Ms. Monda as a fact witness, (Doc. 65-1 at 42-43), and the Court may and will consider the admissible parts of her testimony in Paragraphs 1-6, 10-14, 25-26, 32-36, and 38.

For the reasons stated, it is **ORDERED** that the motion to strike, (Doc. 57), is **GRANTED** in substantial part and otherwise **DENIED,** as set forth herein.

This the 15th day of January, 2015.

_____
UNITED STATES DISTRICT JUDGE